**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ERIC RUSHING,

           Petitioner,

v.                                          Case No. 3:16-cv-112-J-32JBT

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS, et al.,

           Respondents.

_____

## ORDER

## I.  Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing, through counsel, a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (Petition). He challenges his 2010 state court (Duval County, Florida) judgment of conviction for aggravated battery with a deadly weapon, a lesser-included offense, and aggravated assault with a deadly weapon. He is serving a twenty-five year term of imprisonment. Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Doc. 12) with Exhibits (Docs. 12-1 to 12-6) (Ex.). Petitioner filed a Reply (Doc. 20), and two notices attaching additional materials (Docs. 21, 22). The case is now ripe for review.[1]

_____

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

_____

evidentiary hearing." Id. The Court find that "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available

for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747-748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir.
> 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4]
> Under the prejudice prong, [a petitioner] must show that "the
> errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness." <u>Id.</u> at
> 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive consideration on
> the merits of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional violation has
> probably resulted in the conviction of one who is actually
> innocent, a federal habeas court may grant the writ even in the
> absence of a showing of cause for the procedural default."
> <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and requires proof of
> actual innocence, not just legal innocence. <u>Johnson v.
> Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

---

4 <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied

Strickland's deferential standard,' then a federal court may not disturb a state-court decision denying the claim." Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (quoting Richter, 562 U.S. at 105). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Marshall, 828 F.3d at 1285 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (quotations and citation omitted)).

### III. Analysis

The State of Florida charged Petitioner by information with four counts, but it proceeded to trial only on counts one and three. See Ex. A at 16-17. Count one charged Petitioner with attempted murder in the second degree of victim Bradley Ring, and count three charged Petitioner with aggravated assault on victim James Crews. At the conclusion of the trial, the jury found Petitioner guilty of aggravated battery on Mr. Ring, a lesser included offense, with a finding that Petitioner actually possessed and discharged a firearm during the commission of the offense. See id. at 88-89. The jury also found Petitioner guilty of aggravated assault on Mr. Crews, with a finding that Petitioner actually possessed a firearm during the commission of the offense. See id. at 90. Petitioner challenges his judgment of conviction on the following twelve grounds.

**A. Ground One**

Petitioner argues that his trial counsel was ineffective for failing to retain an independent forensic pathologist to testify at trial in support of Petitioner's theory that he acted in self defense. Petitioner claims that a forensic pathologist's testimony that the victim was only a few inches away from Petitioner at the time of the shooting would have supported Petitioner's version of events. See Doc. 20 at 2 ("[I]f a defense expert would have testified that Mr. Ring was only a few inches away from Petitioner Rushing at the time of the gunshot, this testimony would have supported Petitioner Rushing's self-defense claim that he was on his back and defending himself from Mr. Ring's attack."). He further states that a defense expert would have testified "that gun powder from a 357 snub nose will go no further than three feet." Id. Respondents contend that "the prosecution's theory in no way involved the Petitioner and victim being a few feet apart, but instead involved Petitioner shooting the victim at 'point blank range.'" Doc. 12 at 5. Respondents assert that the state court's adjudication of this claim is entitled to deference, and therefore the claim should be denied.

Petitioner raised this claim as ground one in his state court post-conviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850.[5] The state court found as follows:

> In Ground One, Defendant contends that counsel was ineffective for failing to retain and present an independent forensic pathologist as a witness at trial. In support of this argument, Defendant maintains that, at trial, he raised self-defense. Defendant asserts the State's theory was that Defendant was a few feet away from Brad Ring ("Ring") when

---

[5] In its order denying Petitioner's Rule 3.850 motion, before addressing the substantive grounds, the state court denied Petitioner's request that the State be ordered to turn over the victim's medical records so that Petitioner's forensic pathologist could analyze the records in support of ground one in his Rule 3.850 motion (the same as ground one in the Petition). See Ex. H at 148-49.

Ring was shot. Defendant avers Defendant was on his back and Ring was on top of Defendant, attacking him, when Ring was shot. Defendant asserts that a forensic pathologist would support Defendant's version of events.

Initially, this Court finds that Defendant agreed no other witnesses were going to be called during trial. Specifically, this Court notes that during Defendant's final pretrial, this Court conducted a colloquy with Defendant in which Defendant acknowledged that he would be the only possible witness testifying during his own case in chief. (Ex. D at 3-4.) Defendant testified there were no other witnesses that he asked counsel to locate, interview, list, or call as a witness during his trial. (Ex. D at 3.) This Court further asked Defendant whether there was anything discussed during the hearing that he did not understand, in which Defendant replied, "No, Your Honor. Everything is crystal clear." (Ex. D at 14.)

After Defendant's case in chief and before the charge conference, this Court conducted a second colloquy with Defendant in which Defendant testified that there were no other witnesses he wanted his attorneys to call. (Ex. E at 365.) Defendant further testified that there was no other evidence he believed should be presented. (Ex. E at 365-66.) Defendant may not seek to go behind his sworn testimony in a postconviction motion. See Stano v. State, 520 So. 2d 278, 280 (Fla. 1988); Bir v. State, 493 So. 2d 55, 56 (Fla. 1st DCA 1986).

Furthermore, Defendant cannot show that he was prejudiced by the omission of a forensic pathologist expert. Defendant claims that the expert would have supported his testimony and self-defense theory by showing that Defendant was on his back and Ring was on top of him, only a few inches away, when Ring was shot. However, this is the exact physical scenario that Ring and the other victim, James Crews ("Crews") testified to during trial. (Ex. E at 60-62; 123-26.) Specifically, Ring testified that he and Defendant had fallen to the floor and as Ring was trying to stand up, he looked down and saw Defendant turning the gun around in his hand. (Ex. E at 60-62.) Further, the State repeatedly told the jurors that Defendant shot Ring at point-blank range. (Ex. E at 14.) Accordingly, the State's argument and the evidence presented at trial support Defendant's testimony and argument that he

> was on his back only a few inches away when he shot Ring. However, despite this corresponding evidence, the jury still found Defendant guilty. Therefore, Defendant cannot show that, but for counsel's alleged deficiency, the outcome would have been different. As such, Ground One is denied.

Ex. H at 150-51. Petitioner appealed, and the First District Court of Appeal (DCA) per curiam affirmed the state court's decision without issuing a written opinion.[6] Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground One.

Even assuming the state court's decision is not entitled to deference, the claim has no merit. Counsel's strategic decisions are due a "'heavy measure of deference,'" and "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (quoting Strickland, 466 U.S. at 689, 691). "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'" Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 647 (11th Cir. 2016) (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). There was no dispute that Petitioner and Mr. Ring were in a physical altercation before Petitioner shot him. The State repeatedly argued that Petitioner shot Mr. Ring at close range. Mr. Ring testified that he was "[n]ot more than a couple of feet" away from Petitioner when he was shot. Ex. A at 62. Mr. Crews testified that

---

[6] Petitioner, through counsel, filed a motion for issuance of a written opinion, Ex. K, that the First DCA denied. Ex. L.

Petitioner was on his back with Mr. Ring over top of him, and when Mr. Ring began to stand up, Petitioner shot Mr. Ring. See id. at 123-26; see also id. at 124 ("[Petitioner] pushes [Mr. Ring] off of him, and [Mr. Ring] starts to come up into the standing position. He's still leaning over [Petitioner] but he's raising his hands at this point."). During cross-examination, Petitioner testified, in part, as follows:

> Q    In fact, you pushed Brad Ring off of you later on that evening, right?
>
> A    No.
>
> Q    You never pushed him off you.
>
> A    I - - when he got - - stopped hitting and got off me, I didn't push him off. He got up and, you know, was - - I believe, was reaching for a weapon.
>
> . . . .
>
> Q    What weapon was he reaching for?
>
> A    Either the - - he could have been reaching for the Taser or the scissors.
>
> Q    And you told him, I'm sure, man, don't do it, right?
>
> A    Yeah.
>
> Q    And he continued to reach for that weapon, right?
>
> A    No. Then he came back and started hitting me.
>
> Q    So he started hitting you again. So he decided not to grab for a deadly weapon, right? He just started hitting you again?
>
> A    Well, that's when he - - that's when I pulled the pistol out of the pocket.

> Q     You pulled the pistol out of the pocket, didn't you, sir, because he was hitting you in the face and you didn't like it, right?
>
> A     No, no. I was - - pulled the pistol out of the pocket because I was scared that if he grabbed a weapon, then my life was going to be over.
>
> . . . .
>
> Q     You just . . . shot [a] man at point-blank range, right?
>
> A     Yes.

Ex. A at 328-29.

Considering the record, the Court finds that Petitioner has not shown that his counsel's failure to retain and present the testimony of an independent forensic pathologist fell below an objective standard of reasonableness. Even assuming it did, Petitioner has not shown prejudice, as he has not shown a reasonable probability exists that the outcome of his trial would have been different had an independent forensic pathologist testified in the manner Petitioner suggests. Thus, Ground One is denied.

### B. Ground Two

Petitioner claims that his trial counsel was ineffective by failing to present as defense witnesses at trial either the paramedics who responded to the scene or the medical personnel at Shands Hospital who treated Mr. Ring. Petitioner argues that such testimony would have supported his self-defense theory, because it would have shown that Mr. Ring suffered no head injuries from the alleged "pistol-whipping" prior to the shooting. According to Petitioner, "[i]f the State's witnesses did not tell the truth about Mr. Ring being pistol whipped, then it would have discredited their testimony in response to Petitioner Rushing's

self-defense theory." Doc. 20 at 3. Respondents argue that Petitioner never alleged these witnesses were available to testify at the time of trial, their alleged testimony would not contradict the testimony from the State's witnesses, and whether Petitioner pistol-whipped Mr. Ring was not the focus of the trial or a crime charged. Respondents, therefore, request that this Court defer to the state court's adjudication of this claim under AEDPA.

Petitioner raised this claim as ground two in his Rule 3.850 motion. The state court found as follows:

> In Ground Two, Defendant asserts that counsel was ineffective for failing to call the paramedics who responded to the scene or the medical personnel at Shands Hospital who treated Ring. Defendant contends that victims Ring and Crews claimed that Defendant "pistol whipped" Ring over the head with his gun prior to shooting him. Defendant argues that the paramedics and medical personnel, however, did not report any injuries associated with "pistol whipping." Defendant maintains that the witnesses would have testified that they did not observe any head injuries on Ring, which would have supported Defendant's self-defense theory.

> As stated above, Defendant testified during his final pretrial and after his case-in-chief that there were no other witnesses he wanted called at trial (Ex. D at 4-3; Ex. E at 365-66.) Defendant testified that there were no other witnesses that he asked counsel to locate, interview, list or call as a witness during his trial. (Ex. D at 3.) Defendant may not now seek to go behind his sworn testimony in a postconviction motion. <u>See</u> <u>Stano</u>, 520 So. 2d at 280; <u>Bir</u>, 493 So. 2d at 56.

> Further, this Court finds that Defendant fails to show prejudice from this omission. While Defendant testified at trial that he did not hit Ring, Defendant has never denied that he shot Ring in the abdomen. (Ex. E at 276.) Thus, the alleged lack of injuries to Ring's neck and head could not negate the gun-shot wound. In spite of Defendant's testimony that he did not hit Ring in the head, the jury rejected the notion that Defendant shot Ring in self-defense. As such, Defendant

> cannot show that, but for the omission of this testimony, the result would be different.
>
> This Court also notes that, to the extent Defendant is attempting to challenge the sufficiency of the evidence, Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Accordingly, Ground Two is denied.

Ex. H at 151-52. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Two.

Even assuming the state court's adjudication is not entitled to deference, the claim has no merit. During his trial testimony, defense counsel asked Mr. Ring whether he had any bruising from the alleged pistol-whipping, and he responded, "I think I did. I took a couple pictures of myself in the hospital that I don't have with me today after I regained consciousness. And my face did look kind of brown and swollen when I regained consciousness in the hospital three or four days after the fact." Ex. A at 86. Petitioner testified that Mr. Ring "didn't have one mark on his face." Id. at 323. In Petitioner's counsel's closing argument, he specifically argued to the jury: "And that's where Eric supposedly turns around and viciously pistol-whips him. We saw a whole lot of testimony, ladies and gentlemen. We saw a whole lot of evidence and whole lot of photographs. Yet we didn't see

-15-

one picture of one bruise across his face, not one, not a one." Id. at 429. Petitioner's counsel could have strategically chosen not to call the paramedics who responded to the scene or the medical personnel at Shands Hospital who treated Mr. Ring as defense witnesses. Upon review of the record, the Court finds that Petitioner has failed to show that his counsel's performance was deficient in the manner he suggests. And, even assuming deficient performance, Petitioner has not shown prejudice.[7] He has not shown a reasonable probability exists that the outcome of his case would have been different had his trial counsel presented this testimony. Ground Two is denied.

### C. Ground Three

According to Petitioner, his trial counsel rendered ineffective assistance by failing to properly impeach Dorothy Crooks at trial with her prior inconsistent deposition testimony. Petitioner argues that "Ms. Crooks' unimpeached trial testimony improperly bolstered Mr. Crews' testimony," and had counsel properly impeached her, it would have called the State's version of events into question. Doc. 1 at 24. Respondents counter by arguing that Ms. Crooks' testimony was thoroughly impeached, and her alleged prior inconsistent statement was offered for impeachment rather than for the truth of the matter asserted and thus was

---

[7] In 2017, while this case was pending, Petitioner hired a private investigator to locate and interview fact witnesses (Doc. 21-1). The investigator located George James, who was the EMT Lieutenant on duty when Mr. Ring was shot. According to the investigator, "Mr. James explained that he would have conducted a head to toe exam of the patient. This exam would have included any and all findings and would have been notated on the EMT 'run' report. . . . Mr. James further reported that if the report did not indicate any other injuries, that meant specifically, there were no injuries." After reviewing the run report from that night, the investigator avers that Mr. James "confirmed he did the examination of the patient," and that "there were no injuries, scrapes, cuts, abrasions[,] open wounds, bruising, contusions or anything that was visually identified on the patient other than the gun shot wound in the abdomen area. . . . There was no trauma, physical or visual, to the head area of Mr. Ring indicating being hit with any object."

"ineffectual" as to Mr. Crews' testimony. Doc. 12 at 15. Respondents request that this Court defer to the state court's adjudication of this claim. In his Reply, Petitioner asserts that Ms. Crooks' testimony that Petitioner pointed a gun at Mr. Crews was harmful to his theory of self-defense, and had counsel properly impeached her with her prior inconsistent statement, the harm could have been cured.

Petitioner raised this claim as ground three in his Rule 3.850 motion. In denying the claim, the state court found as follows:

> In Ground Three, Defendant claims that counsel was ineffective for failing to properly impeach Dorothy Crooks ("Crooks") with her prior inconsistent deposition testimony. In support of this contention, Defendant states that at trial, Crooks testified that she saw Defendant point a gun at Crews. Defendant avers that during her deposition, however, Crooks testified that she did not see Defendant point a gun at anyone. Further, Defendant maintains that Crooks testified during her deposition that she never saw Defendant threaten Crews, but gave contrary testimony at trial.

> During cross examination, Crooks testified that she was "pretty sure" Defendant pointed a gun at Crews. (Ex. E at 196.) When counsel then attempted to impeach Crooks with her prior deposition, the State objected for improper impeachment form. (Ex. E at 196-97.) This Court sustained the State's objection and acknowledged that counsel may continue with the proper predicate. (Ex. E at 197.) Thereafter, counsel withdrew his question. (Ex. E at 197.) Assuming *arguendo* that Crooks testified during her deposition that she never saw Defendant threaten Crews with a gun, Crooks's prior inconsistent statement would not have impeached Crews['s] testimony.

> During trial, Crews testified that when Defendant entered the trailer, Defendant pointed a revolver at him and told him to get on his knees. (Ex. E at 114-15.) Crews further stated that he was terrified for his life and thought he was going to die. (Ex. E at 115.) Furthermore, during Crews's testimony, the jury heard a recording of the 911 call Crew[s] made on the night of the incident. (Ex. E at 127-36.) During that call, Crews

> told the operator that Defendant threatened to shoot others. (Ex. E at 133.) Crews's trial testimony is also consistent with the statements he made to Officer Thomas on the night of the incident. (Ex. F at 2.) Thus, while counsel may not have properly impeached Crooks with her alleged prior inconsistent statement, Crews's uncontradicted testimony would still be before the jury for consideration. Accordingly, Defendant cannot show that, but for counsel's alleged failure to impeach Crooks, the outcome of his case would have been different. Therefore, Ground Three is denied.

Ex. H at 152-53. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Three.

Assuming deference is not required, the Court finds the claim has no merit. During her trial testimony, Ms. Crooks admitted to the jury that she could not remember every detail from that evening. See, e.g., Ex. A at 166 ("I was very intoxicated so it was kind of like a film, segments of film. And there are some parts I do remember very clearly, and then there are some parts that I don't."); id. at 189 (Ms. Crooks confirming that she consumed a lot of alcohol in a short period of time and took a Xanax). The following exchange occurred between Petitioner's trial counsel and Ms. Crooks on cross-examination:

> Q      Okay. And you stated that he pointed a weapon at James [Crews]?
>
> A      Yes.

Q     Okay. And you're sure about that?

A     I'm pretty sure, yes. I remember - - yes, he did.

. . . .

Q     Do you remember submitting yourself for a deposition in this case?

A     I do.

Q     Okay. Do you remember going - - answering questions, being asked questions?

A     Yes.

Q     Okay. Can you please turn to Page 74.

[PROSECUTOR]: Your Honor, I'm going to object to improper form of impeachment.

THE COURT: Sustained. You can set up the predicate, Mr. Beckus. You can try to continue with that.

. . . .

[PETITIONER'S COUNSEL]: Your Honor, we will withdraw the question.

Id. at 196-97. On September 7, 2018, Petitioner filed with this Court a copy of Ms. Crooks' deposition testimony (Doc. 22). During her deposition testimony, Ms. Crooks, in initially describing the events of that evening, stated that Petitioner "didn't point the gun at" Mr. Crews. Doc. 22-1 at 75.[8] Later in her deposition testimony, the following discussion occurred:

Q     Did he point a gun at anyone at that point?

A     No. When he went up to James [Crews], the assault rifle was around his arm and he had the revolver. I

_____

[8] The Court cites to the page numbers assigned by the Court's electronic case filing system.

don't remember him actually pointing the gun on James [Crews] directly. I'm not sure.

Q      Okay. Do you know if he was pointing a gun at James [Crews] or he just had it in his hand to the side?

A      I'm not sure.

Id. at 90-91.

During the trial, Mr. Crews testified that the first thing Petitioner did "was point a gun at [his] head and told [him] to hit the floor and not even try to make a phone call, stay away from the phone or [Petitioner] would shoot [him]." Ex. A at 113. Petitioner testified that he "pulled the revolver out of the back of [his] pocket," but "pulled it to the side" and did not point the gun at Mr. Crews or threaten him. Id. at 269.

Based on the evidence and testimony presented, and after being instructed on what should be considered in determining the credibility of witnesses as well as being instructed that each juror could rely upon his/her own conclusion about each witness, the jury ultimately made its credibility determinations. Apparently, Petitioner believes that had Ms. Crooks been impeached on this point, the jury would have necessarily believed Petitioner's testimony that he did not point a gun at Mr. Crews over Mr. Crews' testimony that Petitioner did in fact point a gun at and threaten him.  However, even assuming deficient performance, a review of the record shows no prejudice. Petitioner has not shown a reasonable probability that the outcome of his trial would have been different had his counsel impeached Ms. Crooks in the manner he suggests. Ground Three is denied.

**D. Ground Four**

Petitioner argues that his trial counsel was ineffective for failing to object to the improper jury instructions that did not include the "stand your ground" instruction or the "defense of others" instruction. Respondents contend that this Court must defer to the state court's finding that Petitioner was not entitled to have the jury instructed as he now argues. According to Petitioner, his counsel's failure to ensure the "stand your ground" instruction was given "deprived the jury from being instructed on Petitioner Rushing's theory of defense," and counsel's failure to ensure the "defense of others" instruction was given "deprived the jury from considering whether Petitioner Rushing's actions were necessary to protect Ms. Crooks." Doc. 20 at 5-6 and n.7.

Petitioner raised this claim as ground four in his Rule 3.850 motion. The state court found as follows:

> In Ground Four, Defendant asserts that counsel was ineffective for failing to object to jury instructions that did not include the following provision of Florida Standard Jury Instruction 3.6(f):
>
>> If the defendant [was not engaged in any unlawful activity and] was attacked in any place where [he] [she] had *no duty to retreat and had the right to stand [his] [her] ground and meet force with force, including deadly force*, if [he] [she] reasonably believed that it was necessary to do so to prevent death or great bodily harm to [himself] [herself] [another] or to prevent the commission of a forcible felony.
>
> (Def.'s Mot. 10.) In support of this argument, Defendant claims that Crews invited Defendant into his trailer to pick up Crooks. Thus, Defendant states he was in a place where he had a right to be, and no duty to retreat when the incident happened, supporting a "stand your ground instruction." Defendant further asserts that counsel was ineffective for failing to object to jury

instructions that did not include the "defense of others" provisions as he reasonably believed that his actions were necessary to protect Crooks.

As Defendant's raised self-defense, the jury was instructed on a significant part of Florida Standard Criminal Jury Instruction 3.6(f). (Ex. H.) The portion which Defendant has copied in his instant Motion constitutes only *one paragraph* of Instruction 3.6(f). Foremost, the first sentence of Instruction 3.6(f) reads: "*Because there are many defenses applicable to self-defense, give only those parts of the instructions **that are required by the evidence**.*" Fla. Std. Jury Instr. (Crim.) 3.6(f) (emphasis added). During the jury charge conference, the prosecutor and counsel engaged in a discussion with this Court in which the prosecutor explained that the justifiable use of deadly force instruction has various permutations depending on the facts and circumstances of the case. (Ex. E at 371-72.) The prosecutor further stated that he and defense counsel went over the jury instruction in great detail and came to an agreement that the provisions included represented everything that he believed necessary for Defendant's defense. (Ex. E at 372.) Thereafter, Defendant affirmatively agreed, under oath, that the jury instructions were the correct forms to use. (Ex. E at 372.) Defendant also testified that he was pleased with the way his attorneys tried his case. (Ex. E at 478.)

The State did not argue to the jury that Defendant did not have the right to use self-defense because he failed to retreat when he had a duty to do so. Instead, the essence of the State's argument was that Defendant was in a fist fight with an unarmed man and unreasonably resorted to deadly force. (Ex. E at 409-10.) Moreover, while Defendant argued at trial that he felt he had to protect Crooks, the evidence did not support the use of deadly force in defense of her. Crews gave Defendant directions to his home in order to pick Crooks up. (Ex. E at 171-72.) Crooks testified she did not recall ever telling Defendant she was scared for her safety before Defendant came to pick her up. (Ex. E at 172.) Nevertheless, Defendant showed up at Ring's residence armed with two guns when there was no reason to believe that anyone inside was armed. When he arrived, Crooks stated that she immediately got in front of Defendant and told him, "I'm okay, Eric. They're not hurting me. I'm okay." (Ex. E at 176.) Despite Crooks['s] actions, Defendant entered the house and initiated an

> altercation with Ring, which result[ed] in Ring getting shot.
> Because Defendant affirmatively agreed with the jury
> instructions used and as the evidence did not support the "duty
> to retreat" or "defense of others" provisions, Defendant['s
> counsel] cannot be deficient for failing to object to their
> omission. <u>Willacy v. State</u>, 967 So. 2d 131, 140 (Fla. 2007)
> (citing <u>Maxwell v. Wainwright</u>, 490 So. 2d 927, 932 (Fla. 1986))
> (finding "counsel is not ineffective for failing to make a futile
> objection.") Accordingly, Ground Four is denied.

Ex. H at 153-55. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Four.

Moreover, Petitioner's claim is without merit. The failure to instruct the jury on the "stand your ground" and "defense of others" instructions as Petitioner now requests did not negate Petitioner's theory of self-defense. The trial court instructed the jury, in pertinent part, as follows:

> An issue in this case is whether the defendant acted in
> self-defense. It is a defense to the offense with which Eric
> Ryan Rushing is charged if the injury to Bradley Ring resulted
> from the justifiable use of deadly force.
>
> Deadly force means force likely to cause death or great
> bodily harm.
>
> The use of deadly force is justifiable only if the
> defendant reasonably believes that the force is necessary to
> prevent imminent death or great bodily harm to the themselves
> while resisting, one, another's attempt to murder him or, two,

any attempt to committing aggravated battery upon him or, three, any attempt to committing aggravated battery upon or any dwelling, residence or vehicle occupied by him.

. . . .

In deciding whether the defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing the defendant need not have been actual. However, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.

If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty. However, if from the evidence you are convinced that the defendant was not justified in the use of deadly force, you should find him guilty if all the elements of the charge have been proved.

Ex. A at 453-55.

Considering the record, the Court finds that Petitioner has not shown his counsel's representation fell below an objective standard of reasonableness. Counsel could have reasonably determined that the self-defense instruction given best suited the evidence that had been presented. However, even assuming deficient performance, Petitioner has not shown prejudice, as he has not shown a reasonable probability exists that the outcome of his trial would have been different had these additional instructions been given to the jury. Thus, Ground Four is denied.

**E. Ground Five**

Petitioner claims that his trial counsel rendered ineffective assistance by failing to object to the jury instruction on the permissive lesser included offense of aggravated battery based on great bodily harm, because the elements of this offense were not charged in the information. Respondents contend that this claim is partially an issue of state law because aggravated battery with great bodily harm is an appropriate lesser included offense of attempted second degree murder under Florida law. Thus, Respondents conclude that any objection by Petitioner's trial counsel would have been meritless, and that this Court should defer to the state court's adjudication of this claim. Nevertheless, Petitioner maintains that he cannot be convicted of a lesser included offense where the charging information is silent on an essential element of that offense.

Petitioner raised this claim as ground five in his Rule 3.850 motion. The state court found as follows:

> In Ground Five, Defendant claims that counsel was ineffective for failing to object to the aggravated battery with great bodily harm jury instruction because the elements were not charged in the Information. Specifically, Defendant maintains that the Information did not allege the essential element of "great bodily harm," and thus, it was error to instruct the jury on this permissive lesser [included] offense.
>
> This Court again notes that Defendant affirmatively agreed with the jury instructions to be used and stated that he was pleased with his attorney's performance. (Ex. E at 372; 478) Despite Defendant's acknowledg[]ment, this Court finds that Aggravated Battery with Great Bodily Harm was a properly included permissive lesser included offense.
>
> The Florida Supreme Court explained that a permissive lesser included offense exists "when 'the two offenses appear to be separate [on the face of the statutes], but the facts

alleged in the accusatory pleadings are such that the lesser [included] offense cannot help but be perpetrated once the greater offense has been.'" <u>Williams v. State</u>, 957 So. 2d 595, 598 (Fla. 2007). If this condition is satisfied and the evidence establishes the elements of the lesser included offense, the court must instruct the jury on that offense upon request. <u>Anderson v. State</u>, 70 So. 3d 611, 613 (Fla. 1st DCA 2011).

According to section 784.045(1)(a)1, Florida Statutes, (2009), "[a] person commits aggravated battery who, in committing the battery, [i]ntentionally or knowingly causes great bodily harm . . . ." Here, the facts alleged in the Information directly supported the elements of Aggravated Battery with Great Bodily Harm by stating that Defendant shot Ring with a firearm and as a result of the discharge, great bodily harm was inflicted. (Ex. G.) As Aggravated Battery with Great Bodily Harm is a permissive lesser included offense, counsel cannot be deficient for failing to object to its inclusion.

Ex. H at 155-56. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Five.

Regardless, the claim is without merit. The information charged Petitioner as follows:

ERIC RYAN RUSHING on February 27, 2009, in the County of Duval and the State of Florida, did unlawfully and by an act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, **attempt to kill Bradley Ring, a human being, by shooting Bradley Ring with a firearm**, and during the commission of the aforementioned Attempted Murder in the

> Second Degree the said ERIC RYAN RUSHING did **carry, use and actually possess and discharge a firearm and as a result of the discharge, death or great bodily harm** was inflicted upon any person, contrary to the provisions of Sections 782.04(2), 775.087(2)(a)3, 775.087(1) and 777.04(1), Florida Statutes.

Ex. A at 16 (emphasis added). The trial court instructed the jury:

> To prove the crime of aggravated battery, the State must prove the following two elements beyond a reasonable doubt. The first element is the definition of battery. One, Eric Ryan Rushing intentionally caused bodily harm to Bradley Ring; two, Eric Ryan Rushing in committing the battery **intentionally or knowingly caused great bodily harm to Bradley Ring** or used a deadly weapon.

> A weapon is [sic] deadly weapon if it is used or threaten to be used in a way likely to produce death or great bodily harm.

> Possession of firearm with discharge. If you find Eric Ryan Rushing committed aggravated battery and you also find beyond a reasonable doubt that during the commission of the crime he discharged a firearm and in doing so caused great bodily harm to Bradley Ring, you should find the defendant guilty of aggravated battery with discharge of a firearm causing great bodily harm.

> If you find that Eric Ryan Rushing committed aggravated battery and you also find beyond a reasonable doubt that during the commission of the crime he discharged a firearm, you should find the defendant guilty of aggravated battery with discharge of a firearm.

Ex. A at 460-61 (emphasis added).

Under Florida law, aggravated battery occurs when a person commits a battery while either "[i]ntentionally or knowingly caus[ing] great bodily harm, permanent disability, or permanent disfigurement" or "us[ing] a deadly weapon." Fla. Stat. § 784.045(1)(a). Petitioner

argues that the first alternative ("intentionally or knowingly causing great bodily harm") was not charged in the information, and therefore his counsel should have objected to that portion of the jury instructions. However, even assuming deficient performance, Petitioner has not shown prejudice. Had the trial court not given the "great bodily harm" portion of the instruction, the jury still would have been instructed on the "deadly weapon" portion of the instruction relating to aggravated battery. The undisputed evidence at trial was that Petitioner shot Mr. Ring with a firearm (a deadly weapon).[9] The jury found Petitioner guilty of aggravated battery with a specific finding that Petitioner possessed and discharged a firearm during the commission of the offense.[10] Considering the record, the Court finds that Petitioner has not shown a reasonable probability exists that but for his counsel's alleged deficiency, the outcome of his trial would have been different. Therefore, Ground Five is denied.

### F. Ground Six

Petitioner claims that his counsel was ineffective by failing to move to suppress any alleged statements made by Petitioner to law enforcement after he was arrested on the night in question. According to Respondents, Petitioner's counsel did argue that the statements should be suppressed, and the state court ultimately rejected the argument. As such, Respondents assert the Court should defer to the state court's adjudication. Petitioner counters that had an actual motion to suppress been filed, it would have been granted.

---

[9] See State v. Williams, 10 So. 3d 1172, 1174 (Fla. 3d DCA 2009) ("A firearm is, by definition, a deadly weapon because it is designed to expel a projectile by the action of an explosive which is likely to cause death or great bodily injury.").

[10] The jury did not find that Petitioner discharged a firearm causing great bodily harm. See Ex. A at 89.

Petitioner raised this claim as ground six in his Rule 3.850 motion. The state court found as follows:

> In Ground Six, Defendant asserts that counsel was ineffective for failing to move to suppress Defendant's statements made to law enforcement officials after he was arrested. Defendant claims that after he was arrested, he requested to consult with an attorney prior to speaking with police. Defendant avers that police, however, continued to question Defendant without affording him counsel.
>
> During trial, the State presented Officer Selman as a rebuttal witness who testified regarding statements Defendant made right after being taken into custody. (Ex. E at 351-55.) Before this testimony, the State proffered Defendant's statements and Officer Selman's testimony to such outside the presence of the jury. (Ex. E at 347-50.) At that time, defense counsel objected to the introduction of the statements, arguing that Defendant was in custody and was not Mirandized when the statements were made. (Ex. E at 348.) This Court, however, rejected counsel's argument and determined that the statements were made spontaneously as they were not made in response to law enforcement question. (Ex. E at 349-50.) Accordingly, the statements were admissible, and counsel cannot be deficient for failing to file a motion to suppress such. See Reed v. State, 875 So. 2d 415, 432 (Fla. 2004) (finding counsel was not ineffective for failing to challenge the admission of evidence when such challenge would have been fruitless).
>
> Furthermore, at Defendant's final pretrial hearing, this Court inquired whether counsel was going to file a motion to suppress on behalf of Defendant. (Ex. D at 6.) Counsel responded that he had considered the facts and law, discussed those issues with Defendant, and based on such, determined that a motion to suppress could not be filed in good faith. (Ex. D at 6.) Moreover, Defendant acknowledged that there would be no motion to suppress filed or argued in regards to his case. (Ex. D at 6.) Defendant also testified that he understood everything discussed during his final pretrial. (Ex. D at 14.) Defendant may not now seek to go behind his sworn testimony in this Motion. See Stano, 520 So. 2d at 280. Defendant is, thus, not entitled to relief.

Ex. H at 156-57. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on this ground.

Even assuming deference is not appropriate, the claim has no merit. Before eliciting this testimony in the State's rebuttal case, the following exchange occurred outside the presence of the jury:

> MR. GARRISON [(prosecutor)]: There were statements that were made by this defendant that Officer Selman recorded, spontaneously, which I refer to my cross examination, **which we would call to impeach the testimony of the defendant**. I don't know if the Court prefers to have that proffered to ensure that they were knowingly and voluntarily made or do the proffer during the course of the testimony, however the Court --

> THE COURT: It was a non-custodial statement?

> MR. GARRISON: No, sir. Here's what we expect the testimony will be. Officer Selman detained the defendant in the front yard, as was testified to earlier. He was assigned to stand guard over or be with the defendant during that time. He's the one that handcuffed him and was assigned for his safety. Officer Selman indicated in his report that on numerous occasions while he was standing next to the defendant, without being questioned, **the defendant spontaneously uttered statements** to the effect of he -- the victim was hitting him, and he shot him, that he only meant to scare him and said nothing, of course, during any of those statements about a deadly

-30-

weapon or anything like that. That's the sum and substance of it.

THE COURT: All right. Mr. Beckus?

MR. BECKUS [(defense counsel)]: We would argue that he wasn't Mirandized and he was in custody, Your Honor, so we would object.

THE COURT: What's the timing of these statements to the events?

MR. GARRISON: There's no -- there's no question the defendant is in custody. It was immediately afterwards, right as the defendant came -- was -- was apprehended and put into custody. There's no question he was in custody.

THE COURT: Had he invoked his right to an attorney?

MR. GARRISON: If they had questioned him, you're absolutely right. If they had questioned him at all about what had taken place, if there had been any custodial interrogation.

THE COURT: **It was not in response to any questions**.

MR. GARRISON: **No, sir. The officer will testify it was spontaneously uttered, and it's noted specifically in his report**.

I'd also put in the record, because the defendant made some allusions to it in his testimony, that the discovery process indicated that after these spontaneous statements were made to the patrol officer, this defendant was then transported downtown to the aggravated battery office, Mirandized by Detective Thomas, questioned for some 15 minutes before -- then he invoked to a completely separate officer and said he wanted a lawyer. So there's nothing about any of these statements that I'm seeking to elicit that this defendant made any --

THE COURT: You just need to - - I mean, the defendant brought it up. . . . But I still don't recommend you go through the door of . . . invoke my right to counsel.

Ex. A at 347-50.

The statements at issue were elicited in the State's rebuttal case and used as impeachment as to Petitioner's own testimony. See id. at 351-55. And the jury was instructed that "[s]uch a statement should always be considered with caution and be weighed with great care to make certain it was freely and voluntarily made. Therefore, you must determine from the evidence that the defendant's alleged statement [made to law enforcement] was knowingly, voluntarily and freely made." Id. at 467-68. There was no deficient performance, and no prejudice. The Court denies Ground Six.

**G. Ground Seven**

Petitioner asserts that his counsel was ineffective by failing to argue to the jury that the stun gun that was on the table was a "deadly weapon." Petitioner recognizes that no Florida cases have determined whether a stun gun is a deadly weapon, but argues that "other jurisdictions have concluded that stun guns may qualify as deadly weapons. Thus, nothing would have prevented defense counsel from arguing that the stun gun in the instant case was a deadly weapon and/or Petitioner Rushing reasonably believed that the stun gun was a deadly weapon." Doc. 1 at 35. Petitioner concludes that by failing to argue as such, "counsel caused substantial harm to Petitioner Rushing's self-defense theory." Id. at 36. Respondents assert that this claim has no merit, because such an argument was not supported by Florida law, and thus this Court should defer to the state court's adjudication of this claim.

Petitioner raised this claim as ground seven in his Rule 3.850 motion. The state court found as follows:

> In Ground Seven, Defendant alleges that counsel was ineffective for failing to argue that the stun gun found on a nearby table was a "deadly weapon." In support of this contention, Defendant claims that prior to shooting Ring, Ring was reaching for a stun gun and/or scissors that were lying on a table. Defendant maintains that the State, in its closing, argued that the stun gun was not a deadly weapon. Defendant asserts that counsel should have argued that the stun gun did qualify as a "deadly weapon."

> "A deadly weapon is 1) any instrument which, when it is used in the ordinary manner contemplated by its design and construction, will or is likely to cause great bodily harm, or 2) any instrument likely to cause great bodily harm because of the way it is used during a crime." D.C. v. State, 567 So. 2d 998, 1000 (Fla. 1st DCA 1990) (citation omitted). In the instant case, the victim was unarmed at all times and completely unaware of the stun gun's location. (Ex. E at 53.) As such, the only "deadly weapon" definition that would apply is whether the stun gun, by it ordinary use, would cause great bodily harm. However, no Florida court has determined whether a stun gun constitutes a deadly weapon under either of these two definitions. Nguyen v. State, 858 So. 2d 1259, 1260 (Fla. 1st DCA 2003); Jones v. State, 885 So. 2d 466, 468 (Fla. 4th DCA 2004). Accordingly, any argument that the stun gun was a "deadly weapon" would have been unsupported. Where a substantive argument has been repeatedly rejected by Florida courts, counsel cannot be deemed to be ineffective for failing to raise a meritless argument. Vining v. State, 827 So. 2d 201, 213 (Fla. 2002) (citing Melendez v. State, 612 So. 2d 1366, 1369 (Fla. 1992). Accordingly, Ground Seven is without merit.

Ex. H at 158. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Seven.

Assuming deference is not appropriate, the claim has no merit. Petitioner has not shown that his counsel's performance in this regard was deficient, nor has he shown prejudice. Thus, Ground Seven is denied.

### H. Ground Eight

According to Petitioner, his counsel provided him with ineffective representation by failing to introduce photographs that demonstrated the injuries he suffered during the incident. Respondents argue that it was undisputed that the victim hit Petitioner, so the photographs would not have contradicted any part of the State's evidence.[11] Respondents contend the state court's adjudication is entitled to deference. Petitioner counters that without the photographs, there was "no way for the jury to properly comprehend and understand the extent of" Petitioner's injuries. Doc. 20 at 9.

Petitioner raised this claim as ground nine in his Rule 3.850 motion. The state court found as follows:

> In Ground Nine, Defendant claims that counsel was ineffective for failing to introduce photographs of Defendant's injuries sustained during the incident. Defendant argues that immediately following the incident, photographs were taken of Defendant's broken nose and bruised face. Defendant asserts that counsel had a copy of these photographs but failed to present them at trial. Defendant maintains that the photos would have supported his self-defense theory and would have

---

[11] Respondents incorrectly state that "it was undisputed that Petitioner was hit by Crews," Doc. 12 at 24, but based on the evidence, it was undisputed that Petitioner was hit by Ring. This appears to just be a scrivener's error.

refuted Ring['s] and Crew[s]'s testimony, who denied that Ring hit Defendant.

During trial, the State questioned Defendant about injuries he sustained during the incident. (Ex. E at 323-25.) Defendant testified that he did not go to the hospital after the incident, but that his eye was "gray" or bruised but not swollen shut. (Ex. E at 324-25.) Defendant, however, attempted to change the subject when the State asked whether he had recognizable marks on his face after the incident. (Ex. E at 324-25.) After much evasion, Defendant stated that he did not know if the marks were easily identifiable. (Ex. E at 325.)

By Defendant's own admissions, he cannot prove that photographs of alleged injuries would have changed the outcome of the case. This is especially true since Defendant did not know if his alleged facial injuries were easily identifiable. Moreover, the photos would not have rebutted the testimony of Ring or Crews as neither witness[] denied that Ring hit Defendant. As cited *supra*, Ring stated that he pushed Defendant and "punched him or struck him a few times." (Ex. E at 58.) Further, Crews testified that Ring hit Defendant. (Ex. E at 150.) Accordingly, Defendant has failed to show prejudice resulting from counsel's alleged deficiency, and, thus, Ground Nine is denied.

Ex. H at 159-60. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Eight.

Assuming deference is not appropriate, the claim has no merit. Petitioner has not shown that his counsel's performance in this regard was deficient, nor has he shown prejudice. Thus, Ground Eight is denied.

## I. Ground Nine

According to Petitioner, his counsel was ineffective when he failed to properly object to the introduction of the AR-15 rifle that was found in Petitioner's vehicle. Respondents argue that the firearm was relevant evidence and admissible under Florida law, and this Court should defer to the state court's adjudication of this claim. Petitioner maintains that if a gun is found in a defendant's possession but not linked to the charged crime, the gun is not relevant and therefore inadmissible.

Petitioner raised this claim as ground ten in his Rule 3.850 motion. The state court denied the claim:

> In Ground Ten, Defendant avers that counsel was ineffective for failing to object to the admission of the AR-15 rifle during trial. Defendant claims that this gun was not relevant because it was found in Defendant's vehicle and not linked to the charged crimes.
>
> At trial, Defendant testified that before entering the victim's home, he grabbed two guns: his AR-15, which he put over his left shoulder, and his .357, which he put in his back pocket. (Ex. E at 266-67.) Defendant further testified that while in the victim's home, the AR-15 was still over his left shoulder when he walked into the victim's bedroom. (Ex. E at 270.) Defendant also admits that the rifle was shot while in the victim's bedroom. (Ex. E at 271.) Defendant further admits that after he shot the victim with the .357, he put the rifle back into his vehicle. (Ex. E at 279.) Based on Defendant's own acknowledgments, it is apparent that the AR-15 was a relevant piece of evidence and, thus, admissible. While it may not have been the gun used to actually shoot the victim, it was relevant in determining Defendant's state of mind or intent during the

-36-

> incident. Accordingly, counsel cannot be ineffective for failing
> to object to the gun's admission. See Reed, 875 So. 2d at 432.

Ex. H at 160-61. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on this claim.

Even assuming the claim is not entitled to deference, the claim is without merit. It is undisputed that Petitioner walked into the victims' trailer with the AR-15 and .357 revolver, and that both firearms were shot while in the trailer. Petitioner testified that after he shot Mr. Ring, he placed the AR-15 back in his vehicle and kept the .357 revolver on his person. Considering the record, the Court denies Ground Nine.

### J. Ground Ten

According to Petitioner, his counsel was ineffective by failing to retain an independent pharmacologist/toxicologist and failing to present the expert as a defense witness at trial. Petitioner asserts that such expert testimony would have called into question the testimony of Mr. Ring, Ms. Crooks, and Mr. Crews based on their levels of intoxication. Respondents claim this ground has no merit because there was no expert present at the scene during the incident to testify to the exact state of the witnesses, and the jury was well aware of the potential effects of the intoxicants consumed by the witnesses. Respondents ask this Court to defer to the state court's adjudication of this claim. Petitioner replies that, although the jury

may have had a general idea of the witnesses' levels of intoxication, an expert was necessary to provide an opinion about how the drugs and alcohol "consumed by the witnesses affected their ability to accurately recount, remember, and recall the events of th[at] evening." Doc. 20 at 11.

Petitioner raised this claim as ground eleven in his Rule 3.850 motion. The state court found as follows:

> In Ground Eleven, Defendant asserts that counsel was ineffective for failing to retain an independent pharmacologist/toxicologist and failing to present the expert as a witness at trial. In support of this argument, Defendant claims that Crooks, Ring, and Crews admitted to drinking alcohol and consuming drugs the night of the incident. Defendant contends that a pharmacologist/toxicologist would have explained that the drugs/alcohol consumed affected these witnesses' ability to accurately recount, remember, and recall the events that happened the night of the incident.

> As stated in Grounds One and Two, Defendant testified on two occasions that there were no other witnesses he wanted to call at trial. (Ex. D at 3-4; Ex. E at 365.) Defendant further testified that there was no other evidence he believed should be presented. (Ex. E at 365-66.) Defendant may not now seek to go behind his sworn testimony in this Motion. See Stano, 520 So. 2d at 280; Bir, 493 So. 2d at 56.

> Further, this Court finds that the testimony of a pharmacologist/toxicologist would not have affected the outcome of Defendant's case as each witness testified to their impairment. Ring testified that he takes medication that requires him to proceed with caution or consult a doctor when mixed with alcohol. (Ex. E at 72.) After this testimony, the jury submitted a question to this Court, asking why Rin[g] takes the medication. (Ex. E at 99-100.) In reply, Ring testified that he is prescribed the medication for anxiety and mild depression. (Ex. E at 100.) Ring further testified that the medication, and the combination of medication and the alcohol he consumed the night of the incident, did not affect his ability to accurately

-38-

perceive and understand the events that took place that night. (Ex. E at 101.)

Crooks, on the other hand, admitted to taking prescription drugs and being very intoxicated the night of the incident, explaining there were some parts of the night she did not remember clearly. (Ex. E at 166, 173.) Counsel also elicited testimony from Crooks that she was impaired. (Ex. E at 189.) Moreover, Crews testified that he took prescription drugs the night of the incident. (Ex. E at 173.) As these witnesses testified to their own mental impairment or lack thereof, Defendant cannot show how he was prejudiced by the omission of expert testimony regarding the general effect of drug consumption on a person's memory. The jury heard evidence regarding the witnesses' drug consumption and the witnesses' subjective level of impairment on the night of the incident. As such, the jury had this information to consider when evaluating credibility. This Court finds that Defendant has failed to show that, but for the omission of an independent pharmacologist/toxicologist's testimony, the outcome of the trial would have been different. Accordingly, Ground Eleven is denied.

Ex. H at 161-62. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. J.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Ten.

Regardless, the claim is without merit. The witnesses all testified as to the amount of drugs and/or alcohol they consumed that night and their levels of intoxication. Nevertheless, even assuming deficient performance, Petitioner has not shown that there is a reasonable

probability that the outcome of the trial would have been different had such expert testimony been presented. Thus, Ground Ten is denied.

### K. Ground Eleven

Petitioner claims that he was denied his constitutional due process right to a fair trial due to the prosecutor's improper closing argument. Specifically, Petitioner claims that the prosecutor impermissibly advised the jury to "do your duty." Respondents assert that this claim is unexhausted, and alternatively, without merit.

Petitioner's counsel did not object during the closing argument at trial. However, on direct appeal, Petitioner argued that the trial court committed fundamental error by allowing the prosecutor to instruct the jurors that it was their duty to find Petitioner guilty of attempted second degree murder. Ex. D. The State responded, Ex. E, and the First DCA per curiam affirmed without entering a written opinion. Ex. F.

Assuming this claim is sufficiently exhausted, Petitioner is not entitled to relief. At the end of the State's closing argument, the prosecutor stated:

> Duval County is a society of laws, and to live in this society and for it to function, we all have to abide by those laws. You've seen all the evidence. You've heard all the testimony. I'm almost finished with my closing argument.
>
> And we're asking you to now do your duty. Return a verdict that speaks for the truth, that speaks for accountability and that speaks for justice for Bradley Ring and James Crews. Based on the evidence you have, the State is asking you to return a verdict of guilty for attempted second-degree murder because that's what it is and aggravated assault.

Ex. A at 451-52.

Taking the prosecutor's comments in context, he requested the jurors do their "duty" based on the evidence presented. He did not manipulate or misstate the evidence or implicate other rights held by Petitioner. Immediately prior to the parties' closing arguments, the trial judge reminded the jury that what the attorneys say is not evidence. See id. at 378. After the closing arguments, the trial judge instructed the jury as to the elements of each offense and reminded the jury that the State has the burden of proving the crimes while the defendant (Petitioner) has no burden to present evidence or prove anything. See id. at 453-63. The trial judge also instructed the jury that their "duty is to determine if the defendant has been proven guilty or not in accord with the law." Id. at 466-67. Considering the record, the Court finds that the prosecutor's isolated comment did not render Petitioner's trial fundamentally unfair, or "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Therefore, Ground Eleven is denied.

**L. Ground Twelve**

Petitioner asserts that the cumulative effect of the alleged errors deprived him of a fair trial. Respondents argue that this claim is not cognizable on habeas review.

Insofar as Petitioner is raising the same "cumulative error" claim that he raised in his Rule 3.850 motion as ground twelve, the state court denied the claim, Ex. H at 162-63, the First DCA affirmed, Ex. J, and upon review, this Court defers to the state court's adjudication.

Regardless, this claim has no merit. The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to

-41-

determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (citation omitted). This Court has found Petitioner's substantive claims (Grounds One through Eleven) are due to be denied, as no error occurred and Petitioner received a fundamentally fair trial. Thus, there is "nothing to accumulate." Id.; see United States v. Mosquera, 886 F.3d 1032, 1052 (11th Cir. 2018). Ground Twelve is denied.

In light of the foregoing, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      The Clerk shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.      If Petitioner appeals, the Court denies a certificate of appealability.[12] Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall

---

[12]   This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court will deny a certificate of appealability.

terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of March, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 3/6
c:
Eric Rushing, #304396
Counsel of Record